**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────

**WILLIAM CHANDLER**

                    **Plaintiff,**

          **- against -**

**INTERNATIONAL BUSINESS MACHINES**
**CORP.,**

                    **Defendant.**
────────────────────────────────

**21-cv-6319 (JGK)**

**MEMORANDUM OPINION**
**AND ORDER**

**JOHN G. KOELTL, District Judge:**

    The plaintiff, William Chandler, brought this action against his former employer, International Business Machines Corp. ("IBM"), seeking declarations that two provisions in an arbitration agreement that the plaintiff entered into with IBM (the "Agreement") are unenforceable. Specifically, the plaintiff seeks a declaratory judgment that a provision in the Agreement that resulted in an arbitrator's conclusion that the plaintiff's claims against IBM under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., were time barred is unenforceable because the provision impermissibly extinguished the plaintiff's ability to vindicate the substantive rights protected by the ADEA (the "Timing Provision"). The plaintiff also seeks a declaratory judgment that a confidentiality provision in the Agreement that restricts the plaintiff and similarly situated former employees of IBM from disclosing information relating to the arbitration of their claims against

1

IBM is unconscionable and consequently unenforceable (the "Confidentiality Provision").

The plaintiff now moves for summary judgment granting his claims for declaratory judgment pursuant to Federal Rule of Civil Procedure 56. IBM opposes the plaintiff's motion for summary judgment and has moved to dismiss the plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, IBM's motion to dismiss is **granted** and the plaintiff's motion for summary judgment is **denied** as moot.

**I.**

Unless otherwise noted, the following facts are taken from the complaint and accepted as true for the purpose of resolving IBM's motion to dismiss.

The plaintiff was formerly employed by IBM as a Channel Sales Executive. Compl. ¶ 7. In 2017, IBM terminated the plaintiff's employment and the plaintiff signed the Agreement in exchange for a severance payment from IBM. Id. ¶¶ 11-12. The Agreement provided that if the plaintiff wanted to pursue a claim under the ADEA against IBM, the plaintiff could only do so in an individual arbitration. Id. The Agreement included the Timing Provision, which provides:

> To initiate arbitration, you must submit a written
> demand for arbitration to the IBM Arbitration
> Coordinator no later than the expiration of the statute
> of limitations (deadline for filing) that the law
> prescribes for the claim that you are making or, if the

claim is one which must first be brought before a
government agency, no later than the deadline for the
filing of such a claim. If the demand for arbitration is
not timely submitted, the claim shall be deemed waived.
The filing of a charge or complaint with a government
agency or the presentation of a concern though the IBM
Open Door Program shall not substitute for or extend the
time for submitting a demand for arbitration.

Agreement at 26.[1]

The Agreement also included the following Confidentiality

Provision:

Privacy and confidentiality are important aspects of
arbitration. Only parties, their representatives,
witnesses and necessary administrative staff of the
arbitration forum may attend the arbitration hearing.
The arbitrator may exclude any non-party from any part
of a hearing.

To protect the confidentiality of proprietary
information, trade secrets or other sensitive
information, the parties shall maintain the confidential
nature of the arbitration proceeding and the award. The
parties agree that any information related to the
proceeding, such as documents produced, filings, witness
statements or testimony, expert reports and hearing
transcripts is confidential information which shall not
be disclosed, except as may be necessary to prepare for
or conduct the arbitration hearing on the merits, or
except as may be necessary in connection with a court
application for a preliminary remedy, a judicial
challenge to an award or its enforcement, or unless
otherwise required by law or judicial decision by reason
of this paragraph.

Agreement at 27.

_____

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal
alterations, citations, footnotes, and quotation marks in quoted text.

On May 10, 2018, Edvin Rusis, another former IBM employee, filed a class charge with the Equal Employment Opportunity Commission ("EEOC") alleging that:

> IBM is discriminating against its older workers, both by laying them off disproportionately to younger workers and not hiring them for open positions. Indeed, over the last several years, IBM has been in the process of systematically laying off its older employees in order to build a younger workforce. IBM has laid off at least 20,000 employees over the age of forty in the last five years. . . . I believe that I and thousands of other employees have been discriminated against by IBM on the basis of age.

ECF No. 16-5 at 3 (the "Rusis Charge").

On January 17, 2019, the plaintiff filed an arbitration demand advancing claims under the ADEA against IBM. See ECF No. 16-3 (the "Arbitration Demand"). On July 19, 2019, the arbitrator dismissed the plaintiff's ADEA claims as time barred. ECF No. 16-4 (the "Arbitration Decision").[2] The arbitrator reasoned that under the Timing Provision, the plaintiff's claims were untimely because the plaintiff did not file an arbitration demand within the 300-day deadline provided for under the ADEA. Id. at 1; see also 29 U.S.C. § 626(d)(1)(B). The arbitrator concluded that under the Agreement, the plaintiff could not take

---

[2] Although the Rusis Charge, the Arbitration Demand, and the Arbitration Decision were not attached to the complaint, the Court may consider these materials on this motion to dismiss because all three documents are integral to and were expressly referenced in the complaint. See, e.g., Business Casual Holdings, LLC v. Youtube, LLC, No. 21-cv-3610, 2022 WL 837596, at *1 n.2 (S.D.N.Y. Mar. 21, 2022). Moreover, the Court may take judicial notice of the Rusis Charge as a public record that was filed with an administrative agency. See, e.g., Kavowras v. New York Times, Co., 328 F.3d 50, 57 (2d Cir. 2003); Fed. R. Evid. 201.

advantage of the so-called "piggybacking rule," pursuant to which the plaintiff could have used the Rusis Charge to effectively extend the time that the plaintiff would have had to file his arbitration demand. Arbitration Decision at 1-2.

The plaintiff then attempted to opt into a putative ADEA collective action that Rusis had brought in district court against IBM. See Rusis v. Int'l Bus. Machs. Corp., 529 F. Supp. 3d 178 (S.D.N.Y. 2021); Compl. ¶ 16. Judge Caproni ultimately concluded that the opt-in plaintiffs in that action, including the plaintiff, had waived their right to participate in a class or collective action against IBM under the Agreement. See Rusis, 529 F. Supp. 3d at 195. Accordingly, Judge Caproni dismissed the plaintiff from that action.

After being dismissed from the Rusis action, the plaintiff filed this action seeking declaratory judgments that the Timing Provision and the Confidentiality Provision are unenforceable. Compl. at 9-10. The plaintiff represents that if this Court were to grant the requested relief, the plaintiff would move before the arbitrator to reopen the arbitration against IBM and request that the arbitrator reconsider the Arbitration Decision.

**II.**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true and all reasonable inferences must be drawn in the plaintiff's favor.

5

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Where, as here, a motion for summary judgment and a motion to dismiss are both pending, the court may grant the motion to dismiss and deny the motion for summary judgment as moot if the court concludes that the plaintiff's complaint fails to state a claim. See, e.g., Northwell Health, Inc. v. Lexington Ins. Co., 550 F. Supp. 3d 108, 122 (S.D.N.Y. 2021).

**III.**

The plaintiff argues that the Timing Provision is unenforceable because it extinguishes a substantive, non-waivable right conferred on the plaintiff by the ADEA. IBM contends that the plaintiff did not waive any substantive rights protected by the ADEA in the Agreement and advances several

6

additional arguments as to why the Timing Provision should not
be declared unenforceable.

The parties' dispute surrounding the Timing Provision
centers around the piggybacking rule, which is a judicially
created doctrine that is relevant in the context of certain
claims arising under the ADEA. Under the ADEA, no "civil action
may be commenced by an individual . . . until 60 days after a
charge alleging unlawful discrimination has been filed with the
[EEOC]." 29 U.S.C. § 626(d)(1). "The ADEA further requires than
an EEOC charge be filed within 180 days, or 300 days for
[plaintiffs who live in certain states], after the alleged
unlawful practice occurred." Rusis, 529 F. Supp. 3d at 198.
"Thus, while a putative plaintiff is not required to receive
authorization to sue from the agency prior to commencing
litigation – unlike in the Title VII context – the ADEA
nevertheless sets out a statutory administrative exhaustion
requirement prior to filing suit." Id. at 198-99.

In addition to claims that are expressly alleged in an EEOC
charge, "a timely filed EEOC charge also satisfies the
exhaustion requirement for any claims that are reasonably
related to conduct alleged in the EEOC charge." Id. at 199.
Accordingly, an EEOC charge administratively exhausts "not only
those claims expressly included in the EEOC charge but also all
claims based on conduct that would fall within the scope of the

EEOC investigation that can reasonably be expected to grow out
of the EEOC charge." Id. Therefore, if an individual has not
filed an EEOC charge, but that individual's claims arise out of
similar discriminatory treatment in the same time frame that was
described in another individual's timely filed EEOC charge, then
the individual who did not file an EEOC charge may "piggyback"
off the timely filed EEOC charge. Id. at 199-200; see also
Holowecki v. Fed. Express Corp., 440 F.3d 558, 564 (2d Cir.
2006). Accordingly, such individuals may file suit in federal
court alleging violations of the ADEA even though they did not
strictly comply with the exhaustion requirements of the ADEA and
file an EEOC charge on their own behalf.

In this case, the plaintiff did not file an EEOC charge or
the Arbitration Demand within 300 days after his termination.
The Timing Provision provides in relevant part that the "the
filing of a charge or complaint with a government agency . . .
shall not substitute for or extend the time for submitting a
demand for arbitration." Agreement at 26. In the arbitration,
the arbitrator concluded that under this provision, the
plaintiff's claims were time barred because they were not
brought within the 300-day limitations period under the ADEA.
Although the plaintiff argued before the arbitrator that his
claim would be timely if he were permitted to piggyback off the
Rusis Charge, the arbitrator determined that the Timing

8

Provision did not incorporate the piggybacking rule. The plaintiff now argues that the Timing Provision is unenforceable because it deprived the plaintiff of the ability to take advantage of the piggybacking rule and therefore operated as an improper waiver of the substantive rights afforded to the plaintiff by the ADEA.

Under the Federal Arbitration Act ("FAA"), courts "must rigorously enforce arbitration agreements according to their terms." Am. Express Co. v. Italian Colors Restaurant, 570 U.S. 228, 233 (2013). Therefore, provisions in an arbitration agreement are enforceable "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum." Id. at 235; see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985). Arbitral forums may adopt different and more restrictive procedures than those available in federal court so long as claimants are provided "a fair opportunity to present their claims" in arbitration. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991); see also id. (parties may agree to arbitration procedures that are not "as extensive as in the federal courts" and are allowed to "trade[] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."); Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1621 (2018) (explaining that the FAA

directs the federal courts to "respect and enforce the parties'
chosen arbitration procedures"). However, the Supreme Court has
suggested that provisions in an arbitration agreement that
operate as "prospective waiver[s] of a party's right to pursue
statutory remedies" could deprive a claimant of a fair
opportunity to present their claims in arbitration and would
therefore be unenforceable. Am. Express, 570 U.S. at 236. In
sum, while a waiver in an arbitration agreement of the ability
to assert a party's substantive rights may be unenforceable,
parties may agree to arbitration procedures that modify or limit
the procedural rights that would otherwise be available to them
in federal court. See Gilmer, 500 U.S. at 26, 31.

       The plaintiff's arguments that the Timing Provision should
be declared unenforceable are without merit for several reasons.
First, the purported right to take advantage of the piggybacking
rule is not a substantive, non-waivable right protected by the
ADEA. The substantive right protected by the ADEA is the
"statutory right to be free from workplace age discrimination,"
see 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 265 (2009), and
there can be no reasonable dispute that the Timing Provision
afforded the plaintiff a "fair opportunity" to vindicate this
right in arbitration within an entirely reasonable time frame.
See Gilmer, 500 U.S. at 31. Under the Timing Provision, the
plaintiff had 300 days to file an arbitration demand with his

10

ADEA claim, which is the same limitations period that the ADEA itself affords certain plaintiffs to file an EEOC charge and longer than the 180-day limitations period that ADEA affords other plaintiffs that live in certain states. The plaintiff had a full and fair opportunity to file his arbitration demand within the applicable limitations period and simply failed to do so. See Rusis, 529 F. Supp. 3d at 194 n.8 (observing that the "simplest way" in which similarly situated former IBM employees could have avoided issues relating to the Timing Provision "would have been to file timely arbitration demands in the first instance; Plaintiffs do not identify any obstacle, let alone one imposed by IBM, that prevented [them] from filing an arbitration demand on their ADEA claims within the 180- or 300-day deadline established by the separation agreements."); see also Smith v. Int'l Bus. Machs. Corp., No. 1:21-cv-03856, 2022 WL 1720140, at *7 (N.D. Ga. May 27, 2022) (rejecting a substantially identical argument from a former IBM employee and explaining that "the simplest way for Plaintiff to vindicate her ADEA claim was to file a timely demand for arbitration, which she did not do."). The plaintiff's inability to take advantage of the piggybacking rule in arbitration did not prevent the plaintiff from filing an arbitration demand within the 300-day limitations period and seeking to vindicate the substantive rights protected under the ADEA in a timely manner.

11

Second, the plaintiff's arguments that the piggybacking rule is substantive and non-waivable are based on the premise that the piggybacking rule is a statute of limitations doctrine designed to ensure that ADEA plaintiffs have enough time to file their claims. But the piggybacking rule is not part of the statute of limitations law of the ADEA. Instead, the piggybacking rule is an exception to the exhaustion doctrine that excuses plaintiffs from notifying their employer and the EEOC of their claims and filing an EEOC charge when those parties are already on notice of the facts surrounding the plaintiff's claims from an earlier filed EEOC charge. As the Court of Appeals for the Second Circuit has explained:

> The purpose of the administrative charge requirement is to afford the agency the opportunity to seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion. If the agency charged with that task is satisfied that a timely filed administrative charge affords it sufficient opportunity to discharge these responsibilities with respect to similar grievances, it serves no administrative purpose to require the filing of repetitive ADEA charges . . . .

Tolliver v. Xerox Corp., 918 F.2d 1052, 1057 (2d Cir. 1990); see also Foster v. Ruhrpumpen, Inc., 365 F.3d 1191, 1997 (10th Cir. 2004) ("The act of filing a charge is deemed 'useless' in situations in which the employer is already on notice that plaintiffs may file discrimination claims, thus negating the need for additional filings."); Rusis, 529 F. Supp. 3d at 192 n.4 ("[T]he piggybacking doctrine neither 'tolls' the statute of

limitations nor is it intended to permit otherwise time-barred claims to proceed in litigation."). The conclusion that the piggybacking rule is not a statute of limitations doctrine extending the time for ADEA plaintiffs to file their claims is underscored by the fact that piggybacking is not available to a plaintiff who filed an untimely EEOC charge on their own behalf even if that plaintiff would otherwise have been able to piggyback off a timely filed EEOC charge of a different plaintiff. See Holowecki, 440 F.3d at 564-65.

For these reasons, the plaintiff's argument based on the Older Workers' Benefits Protection Act ("OWBPA") are without merit. The OWBPA provides that an "individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary." Estle v. Int'l Bus. Machs. Corp., 23 F.4th 210, 213 (2d Cir. 2022) (citing 29 U.S.C. § 626(f)(1)). "If a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer must provide certain information to the individual for the waiver to be knowing and voluntary." Id. The plaintiff argues that he could not have waived his right to take advantage of the piggybacking rule through the Timing Provision because IBM allegedly did not provide the plaintiff with the disclosures required under the OWBPA before the plaintiff signed the Agreement. But the Court of Appeals for the Second Circuit

has made clear that the rights that give rise to the OWBPA disclosure requirements are "substantive rights and [do] not include procedural ones." Id. at 214; see also id. (reiterating that the substantive right protected by the ADEA is the "right to be free from workplace age discrimination"). And as explained above, the piggybacking rule is a procedural exhaustion doctrine, not a substantive right protected by the ADEA. See also Vernon v. Cassadaga Valley Cent. School Dist., 49 F.3d 886, 891 (2d. Cir. 1995) (concluding that the ADEA's statutory filing period is "procedural," not "substantive"). Accordingly, any alleged disclosure failure by IBM under the OWBPA does not render the Timing Provision unenforceable.

Finally, the plaintiff relies on two inapposite decisions of the Court of Appeals for the Sixth Circuit. In Thompson v. Fresh Products, LLC, 985 F.3d 509 (6th Cir. 2019), a provision in the plaintiff's employment contract purported to waive the statute of limitations otherwise available under the ADEA and provided that any claims must be filed in court within six months after the incident giving rise to the claims. The Court of Appeals concluded that the provision was unenforceable and wrote that "the limitations period in the [ADEA] give rise to substantive, non-waivable rights." Id. at 521. In so holding, the Thompson court relied on an earlier ruling by the Court of Appeals for the Sixth Circuit that invalidated a similar

14

contractual provision that purported to shorten the limitations period for bringing claims in court arising under Title VII. See Logan v. MGM Grand Detroit Casino, 939 F.3d 824, 833 (6th Cir. 2019). The plaintiff contends that these cases demonstrate that because the Timing Provision operated as a waiver of the piggybacking rule and shortened the limitations period for bringing an ADEA claim, it extinguished a substantive, non-waivable right.

The plaintiff's argument is unpersuasive because neither Thompson nor Logan addressed the relevant question here, which is whether under the FAA, parties may agree in an arbitration agreement to adopt procedures that modify the filing deadline for an ADEA claim in arbitration. Indeed, the Logan court explicitly wrote that its holding did not extend to the context of arbitration agreements. 939 F.3d at 839 ("We find that a contractually shortened limitation period, outside of an arbitration agreement, is incompatible with the grant of substantive rights and the elaborate pre-suit enforcement mechanisms of Title VII.") (emphasis added). And the Logan court further recognized that its decision did not disturb an earlier ruling by the Court of Appeals for the Sixth Circuit that upheld a provision in an arbitration agreement that shortened the time period for prosecuting Title VII claims in arbitration. Id. at 837-38; Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 673

n.16 (6th Cir. 2003) (explaining that the plaintiffs "failed to show that the [shortened] limitations period in the [arbitration] agreement unduly burdened her or would unduly burden any other claimant wishing to assert claims arising from their employment." (citing Gilmer, 500 U.S. at 31)); see also Howell v. Rivergate Toyota, 144 F. App'x 475, 480 (6th Cir. 2003) (concluding that a provision in an arbitration agreement that required ADEA claims to be brought in arbitration within 180 days was enforceable because that deadline was "not unreasonably short").

In this case, the Timing Provision afforded the plaintiff ample time and the full limitations period explicitly provided for under the ADEA – 300 days – to file an arbitration demand, which is longer than the Court of Appeals for the Sixth Circuit found to be permissible in Howell. Moreover, for the reasons explained above, the Timing Provision did not shorten the ADEA statute of limitations by not adopting the piggybacking rule because that rule is an exhaustion doctrine, not an aspect of the ADEA statute of limitations, and the plaintiff in this case was not required to exhaust any administrative remedies.[3] See

---

[3] The plaintiff also points to cases including Castellanos v. Raymours Furniture Co., Inc., 291 F. Supp. 3d 294 (E.D.N.Y. 2018), in support of his argument that provisions in an arbitration agreement that purport to shorten the statute of limitations for filing claims may be unenforceable. But the provision at issue in Castellanos dealt with claims arising under the Fair Labor Standards Act ("FLSA"), 9 U.S.C. § 201 et seq., not the ADEA. Under the FLSA, an employee with a timely claim "can recover damages for pay periods" only "as far back as the statute of limitations reaches." Id. at 299-300.

Rusis, 529 F. Supp. 3d at 192 n.4 ("Former employees who wished
to pursue ADEA claims in arbitration pursuant to [the Agreement]
were not required to file a charge of discrimination with the
EEOC. Plainly, then, the piggybacking doctrine is wholly
inapplicable in the arbitration context.").

For all these reasons, the plaintiff's argument that the
Timing Provision is unenforceable fails. Accordingly, IBM's
motion to dismiss the plaintiff's claim seeking a declaration
that the Timing Provision is unenforceable is granted.

## IV.

The plaintiff also seeks a declaration that the
Confidentiality Provision is unconscionable and therefore is
unenforceable.[4]

The Agreement includes a New York choice of law provision
and neither party disputes that the Confidentiality Provision
should be interpreted in accordance with New York law.
Accordingly, whether the Confidentiality Provision is

---

Accordingly, the court concluded that a provision that shortened the
applicable statute of limitations had a substantive impact on the scope of
the plaintiff's claim and the damages that the plaintiff could obtain. Id. at
301-02. Because the plaintiff here has not argued that there is any
comparable rule governing the damages available for an ADEA claim,
Castellanos is inapposite.

[4] Because the Timing Provision is not enforceable, the plaintiff's
Arbitration Demand was correctly dismissed by the arbitrator as untimely. The
plaintiff's claim for declaratory relief with respect to the Confidentiality
Provision is therefore moot. However, for the sake of completeness, the
plaintiff's arguments with respect to the Confidentiality Provision are
addressed here and, for the reasons explained below, are without merit.

unconscionable must be determined with reference to New York law.

The plaintiff contends that the Confidentiality Provision is unconscionable because it unfairly prevents former IBM employees from gathering evidence relating to IBM's alleged discrimination against other similarly situated former employees and using that evidence against IBM in arbitrations. In New York, a provision in an arbitration agreement is unconscionable if "it is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable [sic] according to its literal terms." Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 121 (2d Cir. 2010) (quoting Nayal v. HIP Network Servs. IPA, Inc., 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009)). Generally, there must be a showing that such a contract is both procedurally and substantively unconscionable. Id. A showing of both procedural and substantive unconscionability is required in all but "exceptional cases" in which a provision is "so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." Gillman v. Chase Manhattan Bank N.A., 534 N.E.2d 824, 829 (N.Y. 1988). "The procedural elements of unconscionability concern the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract." Ragone, 595 F.3d at 121-22.

The plaintiff does not argue that the Confidentiality Provision or the Agreement as a whole is procedurally unconscionable. In any event, the Agreement provides that the plaintiff had 21 days to review the Agreement before signing it. Agreement at 10. Moreover, the Agreement explicitly advised the plaintiff to consult with an attorney prior to executing the Agreement. Id. at 24. Accordingly, there is no indication that the circumstances surrounding the execution of the Agreement were coercive or that the plaintiff "lacked a meaningful choice" to enter into the Agreement. See Nayal, 620 F. Supp. 2d at 572.

With respect to substantive unconscionability, the plaintiff contends that the Confidentiality Provision gives IBM an unfair advantage over claimants in arbitration. Among other things, the plaintiff claims that the Confidentiality Provision hampers the plaintiff's ability to prove a pattern of discrimination or to take advantage of findings in past arbitrations. The plaintiff cites several cases that the plaintiff contends supports these arguments, but none of those cases involved the application of New York law. By contrast, under New York law, confidentiality provisions in arbitration agreements are not substantively unconscionable where, as here, the terms of the confidentiality provision "are not one-sided." See, e.g., Suqin Zhu v. Hakkasan NYC LLC, 291 F. Supp. 3d 378, 392 (S.D.N.Y. 2017) ("Here, all of the terms of the Arbitration

19

Agreement — including those in the confidentiality clause —
apply equally to Plaintiffs and Defendants, and Defendants bear
all of the arbitration costs. For this reason, the
confidentiality clause cannot be said to render the Arbitration
Agreement substantively unconscionable."); see also Agreement at
26 ("IBM shall pay 100 percent of the required arbitration
administration fee in excess of [the filing fee]."). Moreover,
the plaintiff's argument is undercut by the fact that if the
plaintiff had filed a timely arbitration demand, he would have
had the opportunity to obtain relevant discovery from IBM within
the confines of the arbitration. Agreement at 27 ("Each party
also shall have the right to make requests for production of
documents to any party and to subpoena documents from third
parties to the extent allowed by law."); see also Kopple v.
Stonebrook Fund Mgmt., LLC, No. 600825/04, 2004 WL 5653914, at
*3 (N.Y. Sup. Ct. July 12, 2004) (concluding that a
confidentiality clause in an arbitration agreement "in no way
inhibit[ed] an [employment discrimination plaintiff] from
preparing his case" because the arbitration agreement "expressly
acknowledge[d] that the parties may engage in discovery").
Accordingly, the plaintiff's arguments with respect to
substantive unconscionability are without merit.

       In sum, the Confidentiality Provision is neither
procedurally unconscionable nor substantively unconscionable

under New York law. There is therefore no basis on which to conclude that the Confidentiality Provision is unenforceable. For these reasons, IBM's motion to dismiss the plaintiff's claim for a declaratory judgment regarding the Confidentiality Provision is granted.[5]

Additionally, because all the plaintiff's claims were dismissed on IBM's motion to dismiss, the plaintiff's motion for summary judgment granting the requested declaratory judgments is denied as moot.

## V.

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." Gunst v. Seaga, No. 05-cv-2626, 2007 WL 1032265, at *3 (S.D.N.Y. Mar. 30, 2007). "However, if an amendment would be futile, a court may deny leave to amend. A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss." Id.

The plaintiff has not requested leave to amend his complaint. Moreover, the current dismissal is not based on any

---

[5] IBM also argues that its motion to dismiss should be granted because the plaintiff is effectively seeking vacatur of the Arbitration Decision under the guise of this action for declaratory judgment, and that any petition to vacate the Arbitration Decision would be untimely under the FAA. The plaintiff contends that he is not seeking vacatur of the Arbitration Decision and instead would move before the arbitrator to reopen the arbitration if he received a favorable disposition here. Because the plaintiff's claims are without substantive merit, the Court need not resolve whether this action for declaratory judgment was the correct procedural vehicle for the plaintiff to pursue the requested relief.

inadequacies in the plaintiff's pleading, but instead is based on determinations that the plaintiff's claims are foreclosed by applicable law. Because the problems with the plaintiff's causes of action are "substantive," "better pleading will not cure [them and] repleading would thus be futile." See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). For these reasons, the current dismissals of the plaintiff's claims are with prejudice.

## VI.

There are several outstanding letter motions to seal materials that were filed in this case that contain or discuss arbitration materials that are covered by the Confidentiality Provision. Because the Confidentiality Provision is enforceable, the outstanding sealing requests (ECF Nos. 22, 30, and 32) are granted.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, IBM's motion to dismiss is **granted** and the plaintiff's motion for summary judgment is **denied** as moot. The Clerk is directed to enter judgment dismissing this case. The Clerk is

further directed to close all pending motions and to close this

case.

**SO ORDERED.**

Dated:      New York, New York
            July 6, 2022

                                    _____
                                        John G. Koeltl
                                    United States District Judge